**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF NEW YORK**

AMBER WALTON (f/k/a AMBER HANSEL)

<i>Plaintiff,</i>

v.

THE RESEARCH FOUNDATION FOR THE STATE
UNIVERSITY OF NEW YORK AND THE STATE
UNIVERSITY OF NEW YORK UPSTATE MEDICAL
UNIVERSITY,

<i>Defendants.</i>

**CIVIL COMPLAINT**

5:18-cv-1428 (TJM/DEP)

Plaintiff, Amber Walton (f/k/a Amber Hansel), by her attorney, H. Larry Vozzo, complaining of the Defendants, alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the New York Labor Law ("Labor Law") §§ 190, 195 and 650 *et seq.*, and applicable regulations; for Defendants' failure to pay plaintiff overtime premium compensation for hours worked over forty (40) in a single week in violation of the FLSA and Labor Law.

## JURISDICTION AND VENUE

2.      This Court has original jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, because Plaintiff's claims arise under the Federal Fair Labor Standards Act, 29

U.S.C. §201 *et seq*. ("FLSA"); and pursuant to 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4), which confer original jurisdiction upon this Court in a civil action to recover damages or secure equitable relief under any Act of Congress providing for the protection of civil rights, including such rights under 29 U.S.C. § 201 *et seq*.

3.      Supplemental jurisdiction over Plaintiff's New York State Labor Law claims is conferred on this Court pursuant to 29 U.S.C. § 1367 (a), because these claims are so related to the FLSA claims that they form part of the same case or controversy under Article III of the United State Constitution.

4.      Venue is proper in this District Court pursuant to 29 U.S.C. §§201-219, since this judicial district lies in a State in which the unlawful employment practices occurred. Venue is also proper in this District Court pursuant to the general venue statute, 28 U.S.C. § 1391(b)(1) and (c), since the Defendants maintain offices, conduct business and/or reside in this judicial district.

5.      Defendants' unlawful conduct in failing to pay Plaintiff premium overtime payments occurred in this judicial district.

6.      Plaintiff resides in and the Defendants conduct and each have a place of business in this judicial district.

7.      Plaintiff was employed by Defendants in this judicial district, Plaintiff's employment records are maintained by Defendants in this judicial district, and decisions adverse to Plaintiff's employment that are the subject of this law suit were made in this judicial district.

## PARTIES

8.     Plaintiff, Amber Walton is a resident of New York State and resides at 204 Roosevelt Avenue, Syracuse, NY 13210.

9.     Throughout the term of her employment with Defendants, Plaintiff was an employee within the meaning of the FLSA and Labor Law.

10.     Defendant, The Research Foundation for the University of New York, (hereinafter referred to as the "Research Foundation") is a private New York non-for-profit corporation headquartered at Albany, New York, with offices and employees in Washington, D.C., and throughout New York state, including offices and employees in this judicial district.

11.     Among its many activities, The Research Foundation provides administrative services to the faculty of the State University of New York ("SUNY"), sponsors research projects throughout the SUNY system, and obtains funding for research projects from state and federal governments and private sources.

12.     Defendant, State University of New York Upstate Medical Center (hereinafter referred to as "Upstate"), a teaching hospital, is part of the New York State University system and is located in this judicial district at Syracuse, NY.

13.     Upon information and belief, at all times relevant to this action, Defendants are an employer within the meaning of FLSA 29 U.S.C. §203(d) and (s) (B).

14.     Upon information and belief, at all times relevant to this action, each Defendant had and has a qualifying annual volume of business in excess of $500,000.00.

15.     At all times relevant to this action, Defendants each have and continue to conduct business in this judicial district.

16.     At all times relevant to this action, Plaintiff was an employee within the meaning of the FLSA and Labor Law.

## FACTUAL ALLEGATIONS

17.     Plaintiff was employed by Defendants from May 19, 2005 through July 27, 2017; although Plaintiff received one pay slip dated November 10, 2017.

18.     Plaintiff's position with Defendants from May 19, 2005 through her last day of employment with Defendants was "Project Staff Assistant" with Upstate's Standardized Patient Program.

19.     Throughout the term of her employment with Defendants, Plaintiff's position as Project Staff Assistant was classified as exempt from FLSA and Labor Law overtime requirements.

20.     Throughout the term of her employment with Defendants, Plaintiff was paid on a salary basis.

21.     Throughout the term of her employment with Defendants, Plaintiff would routinely work 45 to 49 hours per work week.

22.     Throughout the term of her employment with Defendants, Plaintiff worked 50 to 70 hours per workweek approximately ten (10) weeks each year.

23.     Throughout the term of her employment with Defendants, Plaintiff was never paid for any hours she worked in excess of forty (40) in a workweek.

24.     Throughout the term of her employment with Defendants, Defendants knowingly, willfully and intentionally failed or refused to pay Plaintiff one-and-one-half times her regular rate of pay for each hour worked in excess of forty (40) in a workweek.

25.     At the start of her term of employment with Defendants, Steven Harris (hereinafter referred to as "Harris"), Plaintiff's supervisor, explicitly told Plaintiff that; she was an employee of the Research Foundation, that she had to comply with Research Foundation and Upstate policies and procedures, that she was entitled to Research Foundation benefits that would be administered through Upstate and that she was an exempt employee and as such was not eligible for overtime compensation for any hours she worked in excess of forty (40) in a workweek.

26.     Throughout her term of employment with Defendants, Harris, Plaintiff's supervisor, repeatedly told Plaintiff that she was not eligible for overtime compensation for any hours she worked in excess of forty (40) in a workweek because she was an exempt employee.

27.     At various times during Plaintiff's term of employment with the Defendants, Plaintiff would ask her supervisor, Harris, if she could receive compensatory time-off for hours she worked in excess of forty (40) in a workweek and was told by Harris that as an exempt salaried employee Plaintiff was not be allowed compensatory time-off and was told, in sum and substance that Plaintiff would have to "work until all the work is done."

28.     Defendants were aware that Plaintiff was routinely working in excess of forty (40) hours in a workweek.

29.     If Plaintiff worked less than eight (8) hours in any day she was required to charge the time off in two hour increments that would be charged against her allotted sick leave or vacation.

30.     Although Plaintiff was paid on a bi-weekly basis, Defendants required Plaintiff to record and submit to her supervisor, Harris, a timesheet only on a monthly basis, using the Upstate online "Self-Serve" system for Harris' approval.

31.     Oftentimes Harris would unilaterally change Plaintiff's time entries himself without Plaintiff's prior approval.

32.     As evidenced by the fact that Defendants issued pay checks to Plaintiff on a bi-weekly basis; the monthly timesheet submittal was intended to track Plaintiff's time away from work due to vacation, sick leave, holidays, etc. and therefore did not to accurately track and/or record all hours worked by the Plaintiff in a workweek, as required by law.

33.     The monthly timesheet submittal did not provide Plaintiff with a process to enter hours worked in excess of forty (40) in a workweek.

34.     Because of Defendants' practice of not maintaining an accurate record of the number of hours Plaintiff actually worked, Plaintiff began entering, on a daily basis, the actual amount of hours she worked.

35.     These daily entries were made on Plaintiff's Upstate supplied computer's "H" drive and/or stored on Upstate's internal calendar/email software ("GroupWise") used by Plaintiff.

36.     Following Plaintiff's termination of employment, Plaintiff does not have access to these records and has been informed by the Research Foundation that it does not maintain Plaintiff's timesheets.

37.     All of Plaintiff's monthly time sheets, payroll and other records, as well as the daily entries made by Plaintiff on Defendants' "H" drive and GroupWise software documenting the number of hours worked by Plaintiff in a given week, are under the exclusive control of Defendants.

38.     Throughout the term of her employment with Defendants, Plaintiff's paystub listed the number of hours worked in a two week pay period as zero (**Exhibit "A"** attached hereto and made a part hereof, which is a sampling of paystubs issued by Defendants to Plaintiff).

39.     Throughout the term of her employment with Defendants, Plaintiff was provided statement of wages ("paystubs") by the Research Foundation at the time payroll was distributed which did not accurately reflect the all of the actual hours worked by the Plaintiff for that pay period.

40.     Throughout the term of her employment with Defendants, Defendants maintained inaccurate time records and paid Plaintiff according to these inaccurate time records and not for the hours actually worked by the Plaintiff in violation of Labor Law §195(3) which requires employers such as Defendants to furnish each employee with a statement with every payment of wages that lists various categories of information, including, but not limited to: the name of the employer, the employer's contact information, the rate of pay and the total number of hours actually worked by the employee as well as the number of overtime hours actually worked.

41.     Throughout the term of her employment with Defendants, Defendants failed or refused to maintain accurate records of the hours worked by Plaintiff.

42.     Throughout the term of her employment with Defendants, Defendants failed or refused to record the hours worked each week by Plaintiff.

43.     When Plaintiff was hired in 2005 for the position of Project Staff Assistant with the Research Foundation, she interviewed with and was hired by Harris.

44.     Throughout the term of Plaintiff's employment with Defendants, Plaintiff's work was directed and supervised by Harris.

45.     Throughout the term of Plaintiff's employment with Defendants, Harris was employed by Defendant, State University of New York Upstate Medical University ("Upstate"), as the Director of Standardized Patient Program.

46.     Throughout the term of Plaintiff's employment with Defendants, Plaintiff exclusively worked at Upstate facilities and exclusively used office equipment, furnishings and supplies, owned and/or provided by Upstate, and was even provided an Upstate email address (waltona@upstate.edu) with which to conduct official business.

47.     When Plaintiff was terminated, her written notice, dated July 27, 2017, was on Research Foundation letterhead but signed by Paul Ko, M.D.

48.     Dr. Ko was employed by Upstate as Associate Dean, Undergraduate Medical Education and Associate Professor of Emergency Medicine.

49.     Dr. KO's letter informed Plaintiff that her "…employment with the Research Foundation at SUNY Upstate Medical University is terminated…"

8

50.     The bi-weekly wage statements listed the "College of Medicine" as Plaintiff's employer (**Exhibit "A"**).

51.     The bi-weekly wage statement listed the Research Foundation's Payroll office as the employer's telephone number (**Exhibit "A"**).

52.     The bi-weekly wage statement listed Plaintiff's salary grade as "E.99" **Exhibit "A"**); which, upon information and belief, is a pay grade used by the Research Foundation and not one recognized and/or utilized by the New York Civil Service Law or by the State of New York.

53.     The bi-weekly wage statement listed Plaintiff 's work location as 750 E. Adams Street, Syracuse, NY 13210 (**Exhibit "A"**); which is Upstate's official address.

54.     The bi-weekly wage statement listed Plaintiff as "Salaried Annual". **(Exhibit "A")"**

55.     Throughout the term of Plaintiff's employment with Defendants, Plaintiff received a bi-weekly check for wages from the Research Foundation.

56.     Throughout the term of Plaintiff's employment with Defendants, Plaintiff participated in the Research Foundation's employee benefit program.

57.     Throughout the term of Plaintiff's employment with Defendants, Plaintiff was obligated to follow both Research Foundation and Upstate policies and procedures.

58.     Throughout the term of her employment with Defendants, Plaintiff dealt with Upstate's Human Resources Department on all matters involving discipline and benefits.

59.     Throughout the term of her employment with Defendants, both Defendants had joint control, directly or indirectly over Plaintiff's pay, pay grade, job duties, hours worked, records of hours worked, job classification and other terms, conditions and benefits of employment.

60.     Throughout the term of her employment with Defendants, both Defendants had the power to terminate Plaintiff's employment.

61.     On November 1, 2016, Plaintiff was notified via email from Eric Frost, Upstate's Vice President for Human Resources that because of a change in Federal regulations governing the FLSA, Plaintiff's position as an exempt employee would be re-classified to non-exempt because Plaintiff base annual salary on December 1, 2016, would not meet the minimum salary requirement of $47,476 ($913 weekly). See **Exhibit "B"** attached hereto and made a part hereof.

62.     Following Plaintiff's inquiry about the proposed re-classification; Defendants advised Plaintiff that she would receive a small pay increase to bring her above the $47,476.00 minimum salary requirement and thereby retain her classification as exempt from the FLSA overtime compensation mandates.

63.     The memorandum accompanying the Frost email was written on Research Foundation letterhead, referred to the Upstate "Kronos" timekeeping software, referred Plaintiff, a Research Foundation employee, to the Upstate Human Resources Department for any "timekeeping or payroll questions, and contained an Upstate attachment entitled "New Employee Introduction to Time Reporting." (**Exhibit "B"**).

64.     Under the heading "Official Record" the above referenced enrollment form notes that *"A time sheet is an Official State/RF record…"*   (RF refers to "Research Foundation").

65.     The functions, business operations, benefits management, payroll, human resources, discipline, and policy and procedures of the Research and Upstate were intertwined and coordinated to such a degree as to make it difficult if not impossible for the average employee to distinguish between the two entities.

66.     Accordingly, the Research Foundation and Upstate were joint employers under the FLSA and Labor Law.

67.     Throughout the term of Plaintiff's employment with Defendants, Defendants knowingly, willfully and intentionally and wrongfully misclassified Plaintiff's position as "exempt" from FLSA and Labor Law payment of premium overtime.

68.     The Research Foundation supports the Upstate Standardized Patient Program ("SPP").

69.     The SPP retains the services of independent contractors who are individuals who are trained to act as real patients in order to simulate a set of symptoms or problems.

70.     The SPP at Upstate provides medical students, residents and other health care professionals the opportunity to learn and practice effective communication and examination techniques on real people (the standardized patients) without the need to disturb or fatigue actual patients.

71.     The SUNY Upstate Medical University Human Resources Department's Position Questionnaire dated January 18, 2005 (**Exhibit "C"**) was used in classifying Plaintiff's position of Project Staff Assistant for the SPP as exempt from the FLSA and Labor Law payment of overtime provisions.

72.     The Position Questionnaire **(Exhibit "C")** describes the "Scope and Function of the Position" as follows: *"This position provides support to the standardized patient program and the program director. It includes responsibilities for training and supervising standard patients, record keeping and administrative support activities for the director."*

73.     The Position Questionnaire **(Exhibit "C")** further states that the Project Staff Assistant *"...spends 30% of work time supervising other employees and approximately 70 % performing the same level of work subordinates in the work unit."*

74.     According to the Position Questionnaire **(Exhibit "C")**, the Project Staff Assistant has *no* authority or responsibility to: make promotional recommendations; make final decision on hiring; make final decisions on promotions; recommend salary adjustments; maintain employee discipline; or make final decision regarding unsatisfactory employees.

75.     The Job Activities as listed in **Exhibit "C"** as a percentage of total time are as follows:

> *"30% Provide and oversee administrative support to Standardized Patient activities, including  but not limited to ...clinical skills exam scheduling and implementation; writing cases; searching for and writing grant applications; and developing and regularly updating a Handbook for Standardized Patients.*
>
> *25%  Manage and organize calendar, correspondence, mail, phone, travel, committee and task force work, project files, other files, etc. for the Director of the Standardized Patient Program. Make information available on a timely basis for meetings and events.*

> 25%   *Assess nominations and candidates for the standardized patient program, make hiring recommendations, establish and conduct a formalized training program for standardized patients, develop criteria and evaluate standardized patients' performance.*

> 10%   *Evaluate reporting requirements, create databases to track information, develop reports that utilize and extract information.*

> 10%   *Provide support to additional projects and programs at the request of the Director of the Standardized Patient Program."*

76.     According to the Position Questionnaire **(Exhibit "C")**, the Project Staff Assistant had to refer all final decisions regarding hiring and firing; cases and program goals, assessments and direction to a higher authority.

77.     The Position Questionnaire **(Exhibit "C")** lists as *"Not Applicable"* the Project Staff Assistant's responsibility for formulating policy.

78.     With respect to the "…magnitude of financial/budgetary responsibility…" of the Project Staff Assistant, the Position Questionnaire **(Exhibit "C")** lists the following: review expenses against budget, maintain budget records and develop budget recommendations;

79.     As an example of the Project Staff Assistant's financial/budgetary responsibility the Position Questionnaire **(Exhibit "C")** states that *"[t]he incumbent will be responsible for ordering the materials and maintaining and processing payment vouchers for SPs* ("Standardized Patients").

80.     The Position Questionnaire (Exhibit "C") notes that the Project Staff Assistant, "*[m]ust be flexible with work hours as they may change occasionally to meet the needs of the standardized patient program,*"

81.     On a day-to-day basis Plaintiff's actual and "primary" duties as Project Staff Assistant included but were not limited to the following:

-input and edit projects, cases and checklists into "B-Line System,"

-coordinate accurate, current checklists for all projects,

-create and publish student, standardized patient and faculty/monitor logins,

-manage editing and distribution of standardized patient comments and grade reports to students,

-edit and publish student grade reports and other statistical data,

-make supply of fresh coffee for sessions and/or training,

-order and receive catering for sessions,

-conduct student and monitor orientations for sessions,

 -create and publish standardized patients' schedules,

-conduct video viewing sessions for students and provide technical support,

- conduct tours of the Clinical Skills Center,

-distribute and manage student and standardized patient locker keys,

-startup/unlock and close down/lock all doors to the Clinical Skills Center,

-set up classrooms and exam rooms to meet client needs, including moving tables and chairs,

-test run examinations,

-coordinate and attend meetings with standardized patients to focus on quality assurance,

-coordinate client calendars for meetings, trainings and sessions,

-receive student class lists from courses and create student schedules,

-input and edit standardized patient personnel information into database,

-publish standardized patient contact list

-coordinate distribution of Upstate ID badges to standardized patients,

-create and publish directional signs for specific events,

-edit, organize and print case scenario materials for training,

-assist in development of new cases and grading rubrics, and

-fill-in as standardized patient as needed.

82.    Plaintiff's position involved the implementation of decisions, policies and procedures established by others.

83.     Plaintiff was supervised in the performance of her duties, with little or no authority to exercise discretion or to apply independent judgment in matters of significance to the operation of the Research Foundation or Upstate.

84.     Plaintiff was an employee with little, if any, supervisory authority over other employees.

85.     Plaintiff's duties did not include customary and regular exercise of discretion and independent judgment on matters of significance.

86.     Plaintiff's duties can be clearly categorized as: clerical or secretarial and more than not, involved simply  recording or tabulating data, or performing other mechanical, repetitive, recurrent or routing work do not meet the "discretion and independent judgement" criteria required of an exempt administrative employee under the FLSA or NYS Labor Law.

87.     The following chart (based upon best information available to Plaintiff at this time) shows the Plaintiff's base annual salary and hourly rate of pay for the years 2010 through 2017:

| 2010 | $38,818.00 | $18.66/hour |
| 2011 | $43,609.00 | $20.97/hour |
| 2012 | $44,481.00 | $21.39/hour |
| 2013 | $45,371.00 | $21.81/hour |
| 2014 | $42,307.00* | $20.34/hour* |
| 2015 | $46,505.00 | $22.36/hour |

|      |             |              |
|------|-------------|--------------|
| 2016 | $46,505.00  | $22.36/hour  |
| 2017 | $47,435.00  | $22.81/hour  |

*\* Based on Plaintiff's W-2 from 2014. Pay slips are not available to Plaintiff for the year 2014*

88.     Throughout the term of her employment with Defendants, Plaintiff's annual base salary was determined by the Research Foundation.

89.     Notwithstanding the established forty (40) hour workweek; Plaintiff was asked and/or expected to work in excess of forty (40) hours on an almost weekly basis, and 50 to 70 hours at least 10 times per year.

90.     The following examples are illustrative of the weeks of Plaintiff's uncompensated overtime:

(1) During the annual "Clinical Skills Exam," period, Plaintiff worked 65 hours per week during the weeks of: May 19-23, May 27-30, June 2-7, June 9-14, and June 16-21, 2014; May 11-15, May 18-23, June 1-6, and June 8-13, 2015; May 2-6, May 9-14, May 16-21, May 23-27, June 6-11, and June 13-17, 2016; and April 24-28, May 1-6, May 8-13, May 15-20, and May 22-26, 2017.

(2) Plaintiff was directed to and did work 70 hours per week during the annual Department of Physical Therapy "Integrated Standardized Patient Exam (ISPE)" and associated faculty development workshops during the weeks of: March 24-28, March 31-April 4, April 7-11, 2014; March 23-27, March 30-April 3, April 6-10, 2015; March 21-25, March 28-April 1, April 4-8, April 11-15, 2016; and March 20-24, March 27-31, April 3-7, 2017.

(3) 3 to 4 weeks per year, Plaintiff was directed to and did work at least 16 hours on Saturdays and Sundays in addition to a regular 40+ hour work week, to support teaching sessions for external clients such as Vera House.

91.     As part of their regular business practice, Defendants have intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA and NY State Labor Law. This policy, pattern and/or practice include, but are not limited to:

> (a)     willfully failing to record all of the time that Plaintiff has worked to the benefit of the Defendants;

> (b)     willfully failing to maintain timesheets

> (c)     willfully misclassifying the Plaintiff as exempt from the requirements of the FLSA and NY State Labor Law;

> (d)     willfully failing to compensate Plaintiff overtime wages for all hours worked in excess of forty (40) in a workweek.

92.     Upon information and belief, Defendants' unlawful conduct described in this Complaint is pursuant to a policy or practice of minimizing labor costs by violating the FLSA and NYS Labor Law.

93.     Defendants were aware, or should have been aware, that federal and state laws required them to pay Plaintiff an overtime premium for hour worked in excess of forty (40) per workweek.

94.     Defendants were aware, or should have been aware, that Plaintiff: (a) primarily performed routine tasks, such as data entry, scheduling, recordkeeping, coordinating client

schedules, distributing locker keys, supplying coffee and ordering catering services, publishing contact lists, tracking annual expenses, coordinating distribution of Upstate ID badges and filling-in as a standardized patient on an as needed basis; (b) was very closely supervised by the SPP Director; and  (c) exercised little or no discretion in the performance of matters of significance.

95.     Notwithstanding Plaintiff's actual job duties, Defendants willfully classified Plaintiff as an exempt employee in an attempt to avoid payment of overtime compensation.

## CAUSES OF ACTION

## COUNT ONE

### Violation of FLSA 29 U.S.C. §§ 201, *et seq.*, for Failure to Pay Overtime Compensation

96.     Plaintiff repeats, incorporates, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

97.     Defendants engaged in a pattern, policy and practice of violating the FLSA, as detailed in this Complaint.

98.     The overtime wage provisions set forth in the FLSA apply to Defendants and protect the Plaintiff.

99.     As described in the above paragraphs, Defendants suffered, permitted and/or required Plaintiff to routinely work more than forty (40) hours a workweek without paying Plaintiff overtime compensation at the statutorily required rate of one-and-one half (1 1/2) times her regular rate of pay.

100.    Defendants failed or refused to make. Maintain, or preserve accurate records of the time worked by Plaintiff; as required for non-exempt employees pursuant to FLSA 29 U.S.C. §211(c).

101.    Defendants' conduct, as described in this Complaint; has been in willful and intentional violation of the FLSA within the meaning of 29 U.S.C. §255(a) and lasted throughout the Plaintiff's term of employment with Defendants, and, as such, a three year statute of limitations applies pursuant to 29 U.S.C. § 255.

102.    Defendants did not make a good faith effort to comply with the FLSA with respect to their compensation of the Plaintiff.

103.    Defendants knew or showed reckless disregard for the fact that its compensation practices with respect to Plaintiff were in violation of the FLSA.

104.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer a loss of income and other damages by being denied overtime wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, post judgment interest, attorney's fees, costs of this action, including expert witness fees and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

## COUNT TWO

## Violation of the New York State Labor Law §§650 et seq., for Failure to Pay Overtime Compensation

105.    Plaintiff repeats, incorporates, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

106.    Defendants engaged in a pattern, policy and practice of violating the §§ 650 *et seq.* of the NY State Labor Law, as detailed in this Complaint.

107.    The overtime wage provisions set forth in the New York Labor Law §§ 650 *et seq.* apply to Defendants and protect the Plaintiff.

108.    As described in the above paragraphs, Defendants suffered, permitted and/or required Plaintiff to routinely work more than forty (40) hours a workweek without paying Plaintiff overtime compensation at the statutorily required rate of one-and-one half (11/2) times her regular rate of pay.

109.    Defendants' conduct which violates of the New York Labor Law, as described in this Complaint; has been in willful and intentional and lasted throughout the Plaintiff's term of employment with Defendants.

110.    Defendants did not make a good faith effort to comply with the New York Labor Law with respect to their compensation of the Plaintiff.

111.    Defendants knew or showed reckless disregard for the fact that its compensation practices with respect to Plaintiff were in violation of the New York Labor Law.

112.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer a loss of income and other damages by being denied overtime wages in accordance with the New York Labor Law in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, post judgment interest, attorney's fees, costs of this action, including expert witness fees and other compensation.

## COUNT THREE

## Violation of the New York State Labor Law §§195(3) and 661

113.    Plaintiff repeats, incorporates, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

114.    Defendants did not issue accurate wage statements ("paystubs") to the Plaintiff in violation of New York Labor Law §195 (3).

115.    Specifically, for workweeks where Plaintiff worked in excess of forty (40) hours, she was not provided paystubs which accurately reflected the overtime hours worked by Plaintiff.

116.    Throughout the term of her employment with Defendants, Defendants did not maintain or preserve records of the hours worked by Plaintiff for each week worked as required for non-exempt employees pursuant to New York Labor Law §§ 195 and 661, including but not limited to, supporting regulations in 12 N.Y.C.R.R. Part 142.

117.    These practices which violate the New York Labor Law were willful and intentional.

118.    Plaintiff requests relief for violations of New York State Labor Law's notice and record keeping requirements as set forth below in the Prayer for Relief.

## PRAYER FOR RELIEF

WHERFORE, Plaintiff prays for relief as follows:

1.      A judgment that Plaintiff was a non-exempt employee entitled to protection under the FLSA §§ 201-219 and New York State Labor Law §§ 650.

2.      A judgment declaring that the practices complained of herein are unlawful and in violation of FLSA §§ 201-219, New York Labor Law §§ 650 et seq., 195(3) and 12 N.Y. C.R.R. Part 142.

3.      A judgment that Defendants' violations of the FLSA and New York Labor Law were willful and imposing a three and six year statute of limitations period for the FLSA and New York Labor Law claims respectively.

4.      An award to Plaintiff for all damages which Plaintiff has sustained as a result of Defendants' unlawful conduct; including back pay, general and special damages for lost compensation and job benefits Plaintiff would have received but for Defendants' improper practices;

5.      An award to Plaintiff of compensatory damages, including but not limited to damages for emotional pain and suffering where appropriate;

6.      An award to Plaintiff of pre-judgment interest at the highest level rate, from and after the date of service of the initial complaint in this action on all unpaid wages from the date such wages were earned and due;

7.      An award to Plaintiff for the amount of unpaid wages, including interest thereon, and penalties;

8.      An award to Plaintiff of exemplary and punitive damages in an amount
commensurate with Defendants' ability and so as to deter future malicious, reckless and/or
intentional conduct where appropriate;

9.      An award to Plaintiff for costs and disbursements incurred in connection with this
action, including attorneys' fees and expert witness fees;

10.     An award to Plaintiff of liquidated damages and pre-judgment interest on any
unpaid overtime wages upon which liquidated damages were not assessed.

11.     Such other and further relief, in law or equity, as this Court may deem appropriate
and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues in this action that are triable by law.

Dated:  Syracuse, NY                        Respectfully Submitted,
         December 10, 2018

                                            H. Larry Vozzo, Esq.
                                            443 N. Franklin Street, Suite 220
                                            Syracuse, NY 13204
                                            (315) 476-2191 (**Telephone**)
                                            (315) 378-4387 (**Fax**)
                                            hlvesq@yahoo.com
                                            *Attorney for Plaintiff,*
                                            Amber Walton (f/k/a Amber Hansel)